[No. 31400. *En Banc.* May 22, 1950.]

THE STATE OF WASHINGTON, *on the Relation of Mary Jane Hale, Plaintiff,* v. WILLIAM G. LONG, *as Judge of the Superior Court for King County, Respondent.*[1]

*Stanley C. Soderland,* for relator.
*Jonson & Jonson* and *Mary K. Sanders,* for respondent.

SCHWELLENBACH, J.—September 20, 1949, Honorable James W. Hodson signed and entered a decree of divorce in a matter

[1] Reported in 218 P. (2d) 884.

heard in King county entitled, "Donald Hale, Plaintiff, v. Mary Jane Hale, Defendant." The decree granted a divorce to both parties. It also provided:

"Defendant MARY JANE HALE is granted the care, control and custody of DONNA LEE HALE, the minor child of the parties, with the right reserved in the plaintiff to visit said child in her home at all reasonable times and to have said child with him away from the child's home for visitation purposes on one day each week provided the child is returned to her home at a reasonable time before the child's bed time in the evening, all said visitation rights of the plaintiff being subject to his making the support money payments herein provided."

October 1, 1949, the wife remarried and her name now is Mary Jane Edmiston. November 7, 1949, her former husband made the following motion:

"COMES Now the plaintiff above named and moves the Court for an Order requiring the defendant to appear and show cause, if any she has, why the Decree of Divorce entered in the above entitled action on the 20th day of September, 1949, should not be modified as to visitation rights granted to the plaintiff, and the visitation rights clarified and definite dates fixed during which time the said plaintiff may have the minor child with him."

A show cause order was issued and the matter was heard February 23, 1950, before Honorable William G. Long. At the close of the hearing Judge Long continued the matter until May 25, 1950, and ordered that, in the meantime, although the mother *retain the custody* of the child, the father *have her possession* until May 25, 1950, with the right of the mother to have the child from Friday evening until Saturday evening at bedtime, at which time she shall return the child to the father.

The mother then applied to this court for the issuance of a writ of certiorari. March 13, 1950, the chief justice ordered respondent to certify and return to this court on March 31st, the decree and findings and conclusions entered September 20th, together with all proceedings subsequent to the entry of the decree, with the intent that the proceedings

heard before respondent be reviewed by this court, or in the alternative to show cause why he should not do so.

The father and mother of the child were the only two witnesses at the hearing. The father testified that he works Monday through Friday, and sometimes Saturday, although during the prior three months he had only worked two Saturdays; that he had been given to understand that he couldn't have the baby every Sunday—only every other Sunday, and any other day of the week that could be agreed upon; that prior to the filing of the petition his mother had not been allowed to pick up the child; that if allowed to have the child on Sunday he would see that she went to Sunday school; that it would be agreeable if he didn't have her every Sunday, provided that on such days she was sent to a Sunday school of a like denomination; that his mother was very religious, and it was agreed between his wife and himself, before the separation, that the child would be brought up in a certain denomination. (The denomination was not mentioned in the record.)

Under cross-examination he testified:

"The way I see it now, probably I am being a little self-ish, but two or three months goes by and I only have her every other week, why I figure I am not going to be out of line at all asking for every Sunday for two or three weeks in a row maybe."

He admitted that he was given to understand that when he didn't get her on Sunday, any other day of the week would be all right. He testified that the only willful refusal of which he complained was the refusal to let him have the child every Sunday.

Under questioning by the court, he testified that he and his mother had had the girl for approximately one year prior to the divorce; that his mother is sixty-three years old. When asked by the court if his mother were able to take care of the child, he answered:

"She is able and very willing. However, Your Honor, I think that—not that I wouldn't jump at the chance to have her back, but I think it has been pointed out to me that if you added another ten years on to my daughter's life and

my mother's it would be kind of a difficult situation. I mean, she really wouldn't have anybody to take care of her when she needed it most; so I think that the arrangement right now is probably the best that can be expected for her care."

The child's mother testified that her husband does not work Sundays, and that he sometimes has Monday off; that she wasn't willing to let the father have the child every Sunday; that it is the only free day on which she and her husband can be together, that they like to go out on Sundays and naturally want to take the child with them; that it is agreeable that the child's grandmother come and pick her up; that the only time she refused her was one Saturday noon when she was just getting ready to take the child down town to buy her a new coat.

Under cross-examination she testified that the Sunday school to which she sent the child was not the one that had been agreed upon between her and Mr. Hale. She answered: "I don't think it makes too much difference because she can always choose her own Sunday school, and the children in the neighborhood all go to that one, so I think she should." She testified that it would be agreeable to have Mr. Hale take the child to the Sunday school they had agreed upon, when he had her, provided she could also send her to the one that the children in the neighborhood attend.

The court then gave its oral decision:

"It seems rather clear to the Court that something very drastic has to be done in this case to convince this mother that she is not the dictator of this child's future, and that this father is going to have his rights recognized whether she or her new husband, that she acquired eleven days after she got the divorce, whether they like it or not.

"The Court is satisfied from the attitude of the defendant mother that she is arbitrary, that she is in fact trying to impede the rights of this father, and the sooner she finds out that she can't get by with that before the Courts, the better it is going to be for everybody concerned.

"I think she has arbitrarily refused to let him have the child on Sunday, his only day off; that she has concocted a false and fraudulent excuse in the name of Sunday school when she herself admitted on the stand that the child is so

young that it can't get any good out of Sunday school at this point. It is simply an indication of her attitude.

"I think the Court is in the position of having to give this father some visitation rights with this child in lieu of that which has been denied him and which he was entitled to under the decree. It will be the order of the Court that temporarily the decree be modified to this extent:

"That the father will have the right to visit with his child in his own home for the next three months. In other words the child will be in his own home until the 25th day of May, 1950. The custody remains the same, and the mother may have the privilege of visiting her child in her home on Saturdays. She can take the child with her on Friday evening and have the child over Saturdays and return the child back to the father's home Saturday evening—and we will see how she likes this because the time has come when these two people have got to get down to a partnership basis for the rearing of this child.

"The case will be continued until May 25, at 10 o'clock for further proceedings."

The divorce decree of September 20, 1949, was granted under the provisions of Chapter 215, § 11, p. 701, Laws of 1949. Rem. Supp. 1949, § 997-11, provides:

". . . Such decree as to alimony and the care, custody, support and education of children may be modified, altered and revised by the Court from time to time as circumstances may require. . . ."

Although the motion in the present action is to clarify the divorce decree rather than to modify it, the court, in a divorce action, retains jurisdiction of the children of the parties during their minority, and may, upon a proper showing, make such orders as will result in the greatest benefit to them. The welfare of a child of tender years is the paramount consideration. *White v. McDowell,* 74 Wash. 44, 132 Pac. 734; *Beers v. Beers,* 74 Wash. 458, 133 Pac. 605; *MaGill v. MaGill,* 133 Wash. 597, 234 Pac. 273; *Trusley v. Trusley,* 186 Wash. 23, 56 P. (2d) 676. Such a child is not a pawn to be shunted back and forth at the whim of the parents or the judge. We know of no greater responsibility than that placed upon a judge who is required to determine the wel-

fare and future of a child brought into a divorce court by parents who have made a failure of their marriage.

■ We generally place great reliance upon the acts of the trial courts in matters of this kind, and assume that they have not abused the discretion required of them. But we are constrained to hold, in the present case, that the court failed to exercise any discretion. We are certain that it would not knowingly do anything contrary to the child's best interests. But here the court was interested primarily in punishing the mother, rather than in the welfare of the child.

It is suggested that, the matter being before us *de novo*, this court should clarify the decree as to visitation rights. That matter is not before us for review because the trial court made no order in that regard.

The order that the father have possession of the child from the date of the entry thereof until May 25, 1950, is reversed.

SIMPSON, C. J., ROBINSON, HAMLEY, and DONWORTH, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the view expressed that the court was interested primarily in punishing the mother rather than in the welfare of the child. The court was confronted with the all too frequent situation where it appeared that the mother, aided by her newly acquired husband, was resorting to ways and means whereby the visitation privileges of the father might be curtailed and hampered, with the ultimate objective of the alienation of the child's affection for her father. The decree contained the usual rather elastic provision relative to visitation. The father was met with resistance by the use of subtle and ingenious excuses, conjured up to prevent association with his child. This was detrimental to her welfare. The father was obliged to seek the aid of the court to correct such conduct on the part of his former wife. She made a plausible witness in justification of her conduct, but the experienced trial judge could read between the lines and observed from

her general attitude and conduct, both on and off the witness stand, that her intentions belied her words. In such cases it becomes necessary, in the promotion of the welfare of the child, to compel conduct on the part of an offending parent to the end that the child may have the opportunity to associate with the other parent, and an appellate court should not obstruct the trial court in achieving that objective.

We have before us only the printed record. It is apparent that the trial judge was prompted to express the views he did by events which transpired before him that the record does not show. This happens in nearly every contested case. When the court is called upon to exercise its discretion, such matters are of much assistance. We have recognized this when reviewing the action of the trial court in granting or denying motions for new trial. *Coppo v. Van Wieringen, ante*, p. 120 217 P. (2d) 294.

I believe the court was fully justified in fixing an extended visitation period and continuing the hearing for a later determination of more definite times and manner of the exercise of visitation privileges. The child is under school age and for about a year prior to the decree had been residing in the home of her grandmother.

The order should be affirmed.

BEALS, MALLERY, and HILL, JJ., concur with GRADY, J.